IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

─────────────────────────────────X

DALIA PEREZ,

        CASE NO.:

   Plaintiff,

 -against-

        **PLAINTIFF DEMANDS**
        **A TRIAL BY JURY**

SECURITY ALLIANCE, LLC, and
ANDREW CRISTIANO

   Defendants.

─────────────────────────────────X

**COMPLAINT FOR DAMAGES AND JURY DEMAND**

Plaintiff Dalia Perez ("**Plaintiff**" or "**Ms. Perez**"), by her undersigned counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant Security Alliance, LLC (referred to herein as "**ALLIANCE**") and Defendant Andrew Cristiano (referred to herein as "**Cristiano**")(Collectively referred to herein as "**Defendants**"), and alleges as follows:

**INTRODUCTION**

1. This case is about an employer who subjected its blatant hostile harassment and molestation by her supervisors during her employment with the Defendant ALLIANCE.

2. Plaintiff Dalia Perez brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("**Title VII**"), and 18 U.S.C. §1591 ("**Section 1591**"), as well as for assault, battery, and infliction of emotional distress pursuant to state tort law.

3. Ms. Perez seeks monetary relief to redress Defendants unlawful practices in violation of Title VII and Section 1591. Additionally, this action seeks to redress the deprivation

1

of Ms. Perez's personal dignity and her civil right to pursue equal employment opportunities in a place free from the risk of harassment and assault.

4. Defendant ALLIANCE's unrelenting discrimination and harassment against Plaintiff culminated with her unlawful termination.

5. At bottom, Defendants are liable for subjecting Ms. Perez to a work environment infested with relentless gender/sex discrimination which culminated in her constructive discharge.

## PARTIES

6. At all times material, Plaintiff DALIA PEREZ (hereinafter referred to as "Plaintiff" or "PEREZ") was and is an individual woman who is a resident of the State of Florida, Miami-Dade County.

7. Defendant SECURITY ALLIANCE, LLC (hereinafter referred to as "Defendant" or "**ALLIANCE**") was and is a Florida Limited Liability Company authorized to do business in the State of Florida, with their principal place of business located at 8323 NW 12th Street, #218, Miami, Florida 33126.

8. At all times material, Defendant Alliance was Ms. Perez's employer.

9. Defendant ANDREW CRISTIANO (hereinafter referred to as "**CRISTIANO**") was and still is a resident of the State of Florida.

10. Defendant CRISTIANO was employed by Defendant ALLIANCE and held supervisory authority over Plaintiff with regard to her employment including but not limited to, the power to hire/fire, demote/promote, and discipline Plaintiff.

11. At all relevant times, Defendant Alliance, has been continuously doing business in the State of Florida and Miami-Dade County and has continuously held at least 15 employees for all relevant calendar years. *42 U.S.C. § 12111(5)(A); § 760.*

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1), as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII and Section 1591.

13. This Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367 over all State causes of action.

14. Venue is proper in this Court under 28 U.S.C. §1391 because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Miami-Dade Division. Defendant's business was located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. Plaintiff was employed by Defendant ALLIANCE within Miami-Dade, Florida, located in Miami-Dade County, Florida.

## ADMINISTRATIVE PREREQUISITES

15. Plaintiff has complied with all statutory prerequisites in order to file this action, including the exhaustion of administrative prerequisites.

16. On or about November 12, 2020, Plaintiff Perez timely dual filed a Charge of Discrimination and Retaliation with the Equal Employment Opportunity Commission ("**EEOC**"), Charge Number 510-2020-00886, against Defendant ALLIANCE for unlawful employment practices.

17. The EEOC has since issued upon Plaintiff a Right to Sue Letter in reference to the above noted EEOC Charge.

## STATEMENT OF MATERIAL FACTS

18.     On or about August 27, 2019, Defendant ALLIANCE hired Plaintiff as an armed Security Guard.

19.     Defendant ALLIANCE assigned Plaintiff to work as on-site security at the Miami-Dade County Water and Sewer Location.

20.     At all times material, Defendant ALLIANCE advised Plaintiff Perez that she reported to both a Site Supervisor, Mr. CRISTIANO, as well as the Project Manager, Harold Lane (hereinafter referred to as "LANE").

21.     In or around the early fall of 2019, CRISTIANO began to routinely making sexually suggestive and unwelcome comments toward Plaintiff.

22.     Defendant CRISTIANO began his efforts in grooming and harassing Plaintiff by first make comments such as "**I like working with you**" and "**I liked you from the day I met you**." Plaintiff ignored the seeimingly innocuous comments, despite knowing that the repeated nature and linger effect he had around her made her uncomfortable. Plaintiff merely wanted to focus on her work and continue with her new employer undeterred.

23.     Within days, CRISTIANO's comments toward Plaintiff began to quickly escalate from seemingly innocuous to outright sexual and pervasive. By means of example, one Friday morning as CRISTIANO arrived in order to sign Plaintiff's book, CRISTIANO became openly possessive of Plaintiff, demanding to know what the male workers at her location were saying to her. Plaintiff demanded CRISTIANO cease hovering over her as she worked as it made her uncomfortable, insisting that he "go away."

24.     The following day, CRISTIANO again escalated his conduct, commenting on Plaintiff's lips as she applied Chapstick in the presence of her colleagues. As Plaintiff stood to

leave the gate house, CRISTIANO quickly stood up, followed Plaintiff outside and began to grab at Plaintiff's ID Card. As he did such, CRISTIANO made no qualms about using the ID card as a ruse to molest Plaintiff's breasts as the ID hung around her chest. When Plaintiff demanded he stop, CRISTIANO replied, insisting he was just fixing the placement and indicated her belt was misplaced as well, after which he proceeded to grab at Plaintiff's belt and attempt to unbuckle to "adjust it." Plaintiff was horrified and demanded CRISTIANO immediately refrain from touching her.

25. From that point forward, CRISTIANO would frequently throughout Plaintiff's shift comment on Plaintiff's body and physical appearance, which made Plaintiff very uncomfortable. CRISTIANO would refer to Plaintiff as being "**pretty**," and text her frequently regarding non-work-related topics.

26. On one such occasion, CRISTAINO grabbed at Plaintiff's chin as to forcibly kiss her and stated, "**You have nice lips.**" Plaintiff immediately pulled away again demanding CRISTIANO stop harassing her. Undeterred, CRISTIANO replied, "**How do you kiss your spouse if you hate germs?**"

27. On one occasion, CRISTIANO cornered Plaintiff and insisted Lane would make her his wife "number 5 or 6." Again, Plaintiff demanded he stop to no avail.

28. One day, after CRISTIANO's shift had ended, he again targeted Plaintiff as she worked, again cornering her at the Gate House. Plaintiff aware of his predatory ways placed her foot to the door in an effort to prevent CRISTIANO from entering the Gate House. CRISTIANO stated, "**I like you. I think you already now that**" and "**You know you have very sexy lips. I bet you are a good Kisser. Are you a good kisser?**" As Plaintiff moved away, CRISTIANO

continued. "**I would like to kiss your lips. I want to take your lips home with me**" and tried grabbing at her face yet again.

29. The following morning, CRISTIANO sent Plaintiff a barrage of calls and texts, unrelated to work. Plaintiff shortly responded that his comments the day and weeks prior were uncomfortable and unwelcome and that he needed to stop. Ultimately CRISTIANO apologized and stated he would stop. As was ultimately not surprising, CRISTIANO did not in fact stop.

30. On or around October 17, 2019, CRISTIANO, with the pretense of arriving to help kill a bee trapped in her company car, began his sexually hostile and aggressive behaviors again. "**Oh my god,**" he stated, "**You look so beautiful with your dreadlocks, wow you look amazing.**" CRISTIANO repeated these sentiments despite Plaintiff's obvious growing discomfort. CRISTIANO then grabbed Plaintiff and thrusted his entire body against her, stating, "**Don't worry, I won't let anything bad happen to you**" and kissed her on her head. As quickly as it started, CRISTIANO walked away. Plaintiff immediately began to feel physically ill as a result of this interaction.

31. Later that morning, CRISTIANO returned and demanded to know, "**If I wasn't your supervisor, would you go out with me?**" CRISTIANO's harassment was relentless and knew no bounds. Plaintiff responded, "No" and again insisted he would leave her alone and stop harassing her.

32. That afternoon, CRISTIANO seemed to forget his assurance that morning, and again began to harass Ms. Perez. CRISTIANO began by discussing her relationship status and quickly turned to sharing with Ms. Perez that status of his personal spousal relationship, and the fact that he was not actively having sex with his wife, expressing therein his frustration. CRISTIANO then began to push Plaintiff further, stating how he regularly thought about having

sex with her. Despite Plaintiff's begging, he refused to stop harassing her. CRISTIANO instructed Plaintiff to meet him at Tropical Park after her shift, implying they could be intimate there. Plaintiff again refused.

33. On or around October 18, 2019, CRISTIANO again began the day through persistent texts and calls, acknowledging that he knew he had been "nasty" with her and knew it was wrong. Despite his own awareness of his unlawful conduct, CRISTIANO did not stop.

34. On or around October 19, 2019, Plaintiff formally advised Mr. Lane and Project Manager Anthony Socarras (hereinafter "Mr. Socarras") of the ongoing harassment by Mr. CRISTIANO. Plaintiff explained to Mr. Lane that she was apprehensive in reporting CRISTIANO previously as she was aware of Mr. Lane's close personal relationship with CRISTIANO.

35. Defendant ALLIANCE did nothing to address Plaintiff's complaints other than to tell CRISTIANO to stay away from Plaintiff. However, CRISTIANO continued harassing Plaintiff by following her around, inquiring where was at all times, forbidding Plaintiff from speaking with her co-worker VITERI, and even expressly refusing to allow Plaintiff to go to the Gate House where she might see VITERI. Moreover, Plaintiff was deprived of basic functions such as being able to microwave her lunch, since the microwave was located in the Gate House. Plaintiff felt targeted, harassed, and isolated because of CRISTIANO's retaliatory behavior.

36. On or about November 1, 2019 Plaintiff texted Lane advising that the harassment was ongoing and requested that Lane get CRISTIANO to stop targeting her.

37. Shortly thereafter, Mr. Lane advised Plaintiff, in retaliation for her complaint, that she would no longer be eligible to work overtime on Mondays and Tuesday as she had previously done, thereby directly impacting her earning capabilities. On average, Plaintiff's overtime accounted for approximately sixteen (16) additional paid hours.

38. Shocked by this step and the continued harassment by CRISTIANO, on or around November 3, 20219, Plaintiff filed a formal complaint with Defendant ALLIANCE's HR department.

39. As had become a consistent practice at all management levels, both of Plaintiff's complaints went unheeded and Defendant ALLIANCE took no remedial action whatsoever.

40. Defendant ALLIANCE's Human Resources Department claimed to have done an investigation; however, they refused to speak with VITERI who had personally witnessed CRISTIANO's harassing behavior. Human Resources told Plaintiff that VITERI had "a conflict of interest." Furthermore, Defendant ALLIANCE insinuated that Plaintiff was responsible for how CRISTIANO was behaving.

41. Plaintiff felt hopeless and was left with no choice but to resign.

42. On or around December 5, 2019, Defendant ALLIANCE constructively discharged Plaintiff. Defendants made conditions so onerous, abusive, and intolerable for Plaintiff that no woman in Plaintiff's shoes would have been expected to continue working under such conditions and such that Plaintiff choice to resign was void of choice or free will.

43. At all relevant times, Plaintiff was and continued to be qualified for the position he held and for the various positions he maintained with Defendants.

44. The aforementioned allegations are just some of the examples of the discrimination and retaliation Ms. Perez suffered at the hands of the Defendants and are not an exhaustive list of Plaintiff's experiences of discrimination and harassment while employed with Defendants.

45. Plaintiff believes he has been discriminated and retaliated against in violation of Title VII.

46. Additionally, Ms. Perez further claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine. Defendants have exhibited a pattern and practice of unlawful discriminatory conduct.

47. As a result of the acts and conduct complained of, Ms. Perez has suffered and will continue to suffer loss of income, loss of salary, bonuses, benefits, and other compensation which such employment entails. Ms. Perez also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

48. Ms. Perez suffers from increased stress and anxiety. Similarly, Ms. Perez has trouble sleeping as a result of Defendants' unlawful conduct. Ms. Perez is nervous that he will be unable to find work again. However, Ms. Perez is determined to find work and to pursue employment in a workplace that treats individuals with respect and dignity.

49. As a result of Defendant's discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

50. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

51. Further, as a result of Defendants' unlawful employment practices, Ms. Perez felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

52. As Defendant's conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Ms. Perez seeks punitive damages, jointly and/or severally against

Defendants, jointly and/or severally. Ms. Perez has presented factual allegations that would permit any reasonable jury to award damages.

53. At bottom, Defendants are liable for their reckless disregard for Ms. Perez's personal dignity and his civil right to pursue equal employment opportunity.

## COUNT I
### *Cause of Action for Discrimination Under Title VII for Disparate Treatment Based*
### *(As to Defendant Alliance)*

54. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

55. Plaintiff is female and member of a protected class.

56. Defendant Cartier is prohibited under the Title VII from discriminating against Plaintiff because of his sex/gender, race/national origin, in addition to his sexual orientation with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*:

> "(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

57. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to a hostile work environment based solely on his sex/gender, race/national origin, in addition to his sexual orientation.

58. Plaintiff was subject to unwelcome, offensive, and harassing discriminatory conduct during her employment and this conduct was directed to and perpetuated upon Plaintiff because of her sex/gender.

59. The aforementioned actions of Defendant CRISTIANO constitute unwelcome sexual harassment.

60. The harassment was sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff's employment.

61. As a result, Defendant ALLIANCE subjected and permitted its supervisory employee to expose Plaintiff to discrimination and unlawful discharge.

62. ALLIANCE was notified about and was otherwise aware of the discriminatory conduct and policies directed at Plaintiff Hong by Defendant's employees and failed to take appropriate corrective action.

63. The Defendant ALLIANCE knew or should have known of the harassment of Plaintiff, as Plaintiff complained multiple times in accordance with the Defendant ALLIANCE's Employee Handbook.

64. The aforementioned actions created a hostile work environment and constitutes discrimination on the basis of sex, in violation of Title VII.

65. As a direct and proximate result of Defendant ALLIANCE's intentional discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost

wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

66.     Defendant ALLIANCE's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

67.     Conduct of Defendant ALLIANCE and/or its agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

68.     Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT II
### *Cause of Action for Retaliation Under Title VII*
### *(As to Defendant Alliance)*

69.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

70.     Title VII prohibits retaliation against an employee for opposing conduct which would violate the terms of Title VII.

71.     Plaintiff opposed discriminatory conduct by Defendant ALLIANCE which is prohibited by Title VII when she complained to Defendant ALLIANCE about the discrimination and hostile work environment that she was subjected to as described and set forth above.

72.     Plaintiff's complaints about Defendant ALLIANCE's unlawful and discriminatory actions, therefore, constituted protected activity under Title VII.

73.     At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that Defendant ALLIANCE's employees violated of the law and his protected rights.

74. After expressing his opposition to the unlawful discriminatory conduct, Defendant ALLIANCE retaliated against Plaintiff by, among other things, cutting Plaintiff's hours and constructively and unlawfully terminating Plaintiff's employment.

75. The adverse employment actions by Defendant ALLIANCE were the result of Plaintiff's opposition to the discriminatory conduct to which she was subjected, in violation of Title VII.

76. Defendant ALLIANCE's alleged bases for its adverse employment actions against Plaintiff are pretextual and have been asserted only to cover up the retaliatory nature of Defendant ALLIANCE's conduct.

77. Defendant ALLIANCE's employees unlawfully retaliated against Plaintiff because she opposed a practice made unlawful by Title VII.

78. As a result of Defendant ALLIANCE's retaliatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

79. Defendant ALLIANCE's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under Title VII. Accordingly, Plaintiff also requests punitive damages as authorized by Title VII.

80. Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT III
### *For Sex Trafficking by Force and/or Coercion in Violation of 18 U.S.C. §1591*
### *(As to Defendant Christiano)*

81. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

82. 18 U.S.C. 1591, entitled "Sex trafficking of children or by force, fraud, or coercion," states:

> (1) Whoever knowingly—
>
>   i. in or affecting interstate or foreign commerce […] recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person;  or
>
>   ii. benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)
>
> (2) knowing, […] that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act […].
>
> (3) The term "coercion" means—
>
>   i. threats of serious harm to or physical restraint against any person;
>
>   ii. any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or
>
>   iii. the abuse or threatened abuse of law or the legal process.

(4) The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

(5) The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

83. Additionally, 18 USCA § 1595. Civil remedy states as follows:

**(a)** An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

84. Defendant CHRISTIANO knowingly, in or affecting interstate and foreign commerce, solicited Plaintiff Perez knowing the fact that his means of force, threats of force, and coercion, including the mere knowledge he had in terms of his superiority over her at work, would be used to cause Plaintiff Perez to engage in a commercial sex act.

85. Defendant CHRSITIANO thereafter did forcibly grab and assault Plaintiff in a sexual manner during the course of their employment.

86. Defendants violated the sections cited hereto and Plaintiff suffered damage as a result.

15

## COUNT III
### *Participating in a Venture in Violation of 18 U.S.C. §1591*
### *(As to All Defendants)*

87.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

88.     18 U.S.C. 1591, entitled "Sex trafficking of children or by force, fraud, or coercion," states:

> (1) Whoever knowingly—
>
> > i. benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)
> >
> > ii. knowing [ … ] that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act […].

89.     All Defendants benefitted financially, or by receiving something of value, from participating in a venture which has engaged in sex trafficking by force and coercion.

90.     Similarly, as owners, directors, and officers of the offending corporations, the individual defendants received compensation, ownership, and shares in exchange for their participation in the venture.

91.     Defendants violated the sections cited hereto and Plaintiff suffered damage as a result.

## COUNT V
### *Assault and Battery*
### *(As Against All Defendants)*

92. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

93. Defendant CHRISTIANO sexually assaulted Plaintiff as set forth above wherein he groped her chest, and forcibly grabbed her entire body, including but not limited to her waist, and face.

94. Defendant CHRISTIANO was acting within his capacity as an employee of ALLIANCE. As a result, ALLIANCE is vicariously liable for the acts and conduct of Defendant CHRISTIANO.

95. Defendant CHRISTIANO engaged in illegal and improper touching of Plaintiff, against her will and without her consent.

96. Defendant CHRISTIANO forcibly placed his hand of Plaintiff's chin and face, against her will and without her consent.

97. Defendant CHRISTIANO forcibly placed his hand on Plaintiff's breast, against her will and without her consent.

98. Defendant CHRISTIANO forcibly Plaintiff's waist and entire body, against her will and without her consent.

99. As a result of Defendant CHRISTIANO's assaults and batteries, Plaintiff suffered serious and permanent injuries as set forth above.

100. As all Defendants were engaged in a joint venture, they are all jointly liable for the intentional torts of their other co-venturers.

101. Defendants violated the sections cited hereto and Plaintiff suffered damage as a result.

## COUNT VI
### *Intentional Infliction of Emotional Distress*
### *(As Against All Defendants)*

102. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

103. The conduct of the Defendants, individually and collectively, was intentional, personal in nature, retaliatory, extreme and outrageous so as to go beyond all possible bounds of decency.

104. Defendant CHRISTIANO was acting during the course of his employment when he engaged in his sexual assaults and other offensive, extreme and outrageous conduct. As a result, ALLIANCE is vicariously liable for the acts and conduct of Defendant CHRISTIANO.

105. Such intentional, extreme and outrageous conduct caused Plaintiff to suffer humiliation, extreme embarrassment, fear for her well-being and safety, and other severe emotional distress and damages.

106. As a result of Defendant CHRISTIANO's assaults and batteries, Plaintiff suffered serious and permanent injuries as set forth above.

107. As all Defendants were engaged in a joint venture, they are all jointly liable for the intentional torts of their other co-venturers.

108. Defendants violated the sections cited hereto and Plaintiff suffered damage as a result.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendants for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law.

Dated: Miami, Florida           **DEREK SMITH LAW GROUP, PLLC**
       May 4, 2021

_____
Caroline H. Miller, Esq.
701 Brickell Ave, Suite 1310
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Caroline@dereksmithlaw.com

*Counsel for Plaintiff*